IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JOSE MOLINELLI-FREYTES<br>LILLIAN BIRD-CANALS<br>    Plaintiffs<br><br>    vs.<br><br>BRAD WEINER,  ET AL<br>    Defendants | CIVIL NO.  09-cv-1655<br><br>COPYRIGHT INFRINGEMENT<br>AND  INJUNCTIVE RELIEF<br><br>VIOLATION   OF   CONSTITUTIONAL<br>AND CIVIL RIGHT<br><br>PLAINTIFFS DEMAND TRIAL BY JURY |

### *PLAINTIFFS' OPPOSITION TO MOTIONS FOR SUMMARY JUDGMENT AND REQUEST FOR DECLARATORY JUDGMENT AS TO COPYRIGHT OWNERSHIP*

COME NOW, Plaintiffs, JOSE MOLINELLI-FREYTES and LILLIAN BIRD-CANALS, through the undersigned counselor and very respectfully state, aver, and pray:

### *INTRODUCTION*

Plaintiffs Jose Molinelli-Freytes and Lillian Bird-Canals ("Molinelli" and "Bird"),

bring the instant actions for copyright infringement and related moral damages under

state law against defendants in their individual[1] and official capacities.   Plaintiffs have

---

[1] The Court dismissed copyright claims in individual capacity <u>without prejudice</u> contingent upon a showing of fact that any of the defendants knowingly violated plaintiffs' rights.  In terms of copyright infringement, uncontested evidence supports such a finding <u>at least as to defendant Weiner in his individual capacity</u>.   Uncontested evidence demonstrates that Weiner could not have specifically commissioned the work at issue to plaintiffs as he has claimed to have done.  Such a finding would support the fact that Weiner knowingly and purposely violated plaintiffs copyrights by personally

additional claims of procedural due process violations[2] and retaliation related to the facts at issue. Aside from a declaratory judgment in their favor as to copyright ownership, plaintiffs seek injunctive relief.  If plaintiffs copyright ownership were declared, under the facts of this case plaintiffs are also entitled to moral damages and enforcement of their rights of integrity and attribution, as well as statutory damages for unauthorized derivative works procured by defendants after they were put on notice on July 5, 2007. Even if injunctive relief were denied, plaintiffs would be entitled to prospective compensatory damages in the form of a licensing fee.

The instant case has been intensely litigated in this forum with over 350 documents on the records.  This Court also held a Preliminary Injunction Hearing (PIH) which lasted from March15 to March 23, 2010 where plaintiffs and defendants each presented several witnesses and entered 25 and 28 exhibits into evidence respectively. See **Exhibit 1** (Exhibits lists from PIH).

Defendants now move for summary judgment dismissing all of plaintiffs' claims

promoting the unauthorized amendment and use of plaintiffs work. Under those circumstances, defendant Weiner cannot claim ignorance as to the ownership of a work which plaintiffs personally brought to him and would consequently be deprived as to the qualified immunity defense in his individual capacity.   (See Ownership SUFS 10-22).

Likewise, if proven, plaintiffs allegations of due process violations within UPR's Internal Administrative Proceeding imply liability under 42 U.S.C.A. §1983 from which individual defendants would not be shielded by qualified immunity for violating clearly established federal constitutional and statutory rights.

[2]   The Court dismissed with prejudice 42 U.S.C.A. §1983 claims which were related to the acts of infringement as preempted by Copyright Law.   Nonetheless, the Court granted plaintiffs permission to include a new set of §1983 claims related to defendants violation due process in the Third Amended Complaint which were ripening at that moment.  The same were dismissed, albeit without prejudice.  See Dkt. 294 at page 9 and 21.   On this same date, plaintiffs filed a motion to renew their claims of procedural due process violations under the Fourteenth Amendment and 42 USCA §1983 related to the UPR-IAP proceedings.

in three (3) separate motions [3] . These motions are inevitably interrelated and interdependent [4] because UPR related Contributory Infringers and PR-CHE Members have also made unauthorized use of plaintiffs work and are indispensable parties in order to provide the relief requested.  Likewise, UPR related Contributory Infringers who are Trustees of the Board are actively participating of the violations of plaintiffs' procedural due process rights within the UPR Internal Administrative Proceeding (UPR-IAP). Consequently, plaintiffs hereby oppose all three of them collectively.

For the reasons set forth below, defendants' motions must be denied.  Likewise, the evidence submitted supports a declaratory judgment in favor of plaintiffs as to copyright ownership as well as the issuance of permanent injunctive relief enjoining the UPR-IAP from further coercing plaintiffs into a biased proceeding.

## *BACKGROUND*

**A.** *Factual Background Relevant for a Copyright Ownership Determination*

### 1.  *Development of the Proposal and its fixation in the Original Manuscript*

Doctors Bird and Molinelli have been employed as professors of Chemistry and Environmental Sciences at the University of Puerto Rico ("UPR") since 1983 and 1985 respectively. It is uncontested that there is no proper written employment agreement between the parties specifying duties of the position.  The only employment documents

---

[3]   Miguel Munoz, Ana Guadalupe, Brad Weiner, and Rafael Rios ("UPR Primary Infringers") filed Docket 339; remaining UPR related defendants ("UPR Contributory Infringers") filed Docket 341; and Members of the Puerto Rico Council for Higher Education (collectively referred to as "PR-CHE Members") filed Docket 336.

[4] If plaintiffs are successful as to their claims against any of UPR Primary Infringers, then remaining defendants, namely, UPR Contributory Infringers and PR CHE Members, would be indispensable in order to provide injunctive relief.

- 4 -

between the UPR and Plaintiffs are the initial hiring letters, which are not countersigned by Bird and Molinelli and do not specify any specific duty of the position.   (Ownership-SUFS 1-3).

In addition to his regular teaching duties, Molinelli performed supplementary administrative tasks as Director of the Environmental Sciences Program of the UPR in exchange for a modest monthly bonus.  At the time, <u>he was the only full time professor of the Environmental Sciences Program</u> and his main salary corresponded to his professor duties. On top of preparing for and actually teaching his courses, Molinelli's ordinary supplementary duties as program director included tasks such as interviewing, hiring, supervising, and evaluating support personnel, purchasing supplies, and coordinating the operation of the existing undergraduate program. (Ownership-SUFS 3-7).

During the year 1995, Bird and Molinelli came up with the idea of a new graduate program in environmental sciences specialized in tropical islands. At the time Molinelli spent his spare time fighting several public environmental battles independent from the UPR and without its commitment there to or support.  Such battles and Puerto Rico's critical environmental situation at the time served as the prime motivation and inspiration for the professors to engage in the project. In 1996, at their own initiative, plaintiffs started working on research, development, and conceptualization of the innovative idea which was inexistent in any other university in the World.  It is undisputed that Weiner, who according to defendants theory officially assigned the work at issue to Molinelli, did not become Dean of the College until much later in 1999. (Ownership-SUFS 8-12).

It took Plaintiffs five (5) years develop their concept.  By 2001 Bird and Molinelli had completed an original manuscript entitled ***Proposal for the Establishment of Msc***

*and PhD Programs in Environmental Sciences* which consisted of approximately one hundred and eighty six (186) pages  ("Original Manuscript").  The work was performed at their own initiative, without compensation, using personal resources, and in their spare time. It is a fact admitted by defendants that plaintiffs received no compensation in addition to their ordinary salaries or release time for their work in the Original Manuscript.  (Ownership-SUFS 15-16).

At the same time, uncontested evidence shows that the UPR provided Molinelli with additional compensation when analogous tasks of lesser magnitude had been specifically commissioned to him in the past. It is also undisputed that neither the UPR, nor any of the defendants provided plaintiffs with instructions, follow up, or resources for the completion of the Original Manuscript. (Ownership-SUFS 17-19).

In 2001, Bird and Molinelli presented together the Original Manuscript to defendant Brad Weiner for his consideration. At the time he was, and still is, plaintiffs' supervisor as Dean of the Natural Sciences Department of the UPR. (SUF) Defendant Weiner showed surprise when plaintiffs presented to him their work. (SUF). Thereafter, the Original Manuscript commenced within the UPR the review process that the PR-CHE requires for the implementation of any new academic program in an institution of higher learning in Puerto Rico. (Ownership-SUFS 22).

Initially, the Original Manuscript was submitted to peer review.   Plaintiffs' distributed hard copies of the Original Manuscript amongst colleagues of the department and faculty for comments and recommendations.   After consideration, plaintiffs themselves amended the Original Manuscript and submitted the same to the Academic Senate for approval.  Plaintiffs personally defended an amended version of their Original

Manuscript at the Academic Senate level obtaining its approval on October 23, 2003. Nonetheless, in February 2004, defendant Gladys Escalona ("Escalona"), who was UPR Chancelor at the time, informed Bird and Molinelli that no financial support was available to implement their proposal.   At this point plaintiffs were lead by defendants to believe that the institution was no longer interested in their project.  (Ownership-SUFS 24-26).

Defendants concede that until that point Bird and Molinelli prepared all derivatives and incorporated all changes to the proposal themselves.   In fact, the copyright infringements claimed in the instant action refer only to unauthorized derivative works commissioned or approved by defendants thereafter.

### 2. *Defendant's Secret Misappropriation of the Proposal*

During the Spring semester of 2006, without the Authors' participation or consent, defendant Weiner met with some faculty members from the Department of Biology who had opposed plaintiffs proposal at the peer review stage.  Without Bird or Molinelli's knowledge, Weiner instructed them to amend the proposal through an addendum that significantly altered its academic, administrative, personnel, and budget components. (Ownership-SUFS 27-28).

On or about May or June 2006, it casually came to plaintiffs' attention that defendant Weiner presented an unauthorized derivative of the proposal to the UPR Administrative Board without their participation or consent.  (Ownership-SUFS 29).  Appalled, Bird and Molinelli immediately began to make inquiries for information and raised informal copyright infringement claims to defendants because the changes done to the Unauthorized Proposal

affected its integrity  to the point that it no longer represented their intention as Authors. (Ownership-SUFS 30).

### 3. *Plaintiffs  Enforce their Copyrights*

Unable to stop defendants travesty to their work of authorship, on June 29th, 2007, Bird and Molinelli submitted the Original Manuscript to the U.S. Copyright Office and effectively obtained registration of the same. They also registered the Original Manuscript with the Puerto Rico Intellectual Property Registrar Puerto Rico. (Ownership-SUFS 31-32).

It is an uncontested fact that none of the current defendants have competing authorship claims.  None of the defendants opposed plaintiffs' copyright registration of the Original Manuscript or is even claiming joint authorship or copyrights for themselves in the instant suit through a counterclaim.  In fact, in spite of defendants' allegations that "several people contributed work"[5] to the proposal, no other person or entity has filed a competing copyright certificate or lawsuit against plaintiffs seeking declaratory judgment of ownership.[6] (Ownership-SUFS-33-35).

On July 5, 2007, pursuant to UPR Regulations which forcibly impose its own internal forum upon its employees for the "final" resolution of copyright disputes[7], Bird

---

[5] This allegation by defendants ignores the stringent standard established in the Copyright Act to establish joint authorship. _____.

[6] Defendants defense is based solely on an inexistent claim of the UPR for copyrights.  Nonetheless, the UPR is not a party to the instant action and defendants  lack standing to make a copyright ownership claim on behalf of a third party.

[7] The Institutional Policy Regarding Intellectual Property, Certification 93-140, which this Court has already adopted as applicable law of the case, reads in Section VIII:

> VIII. Procedures for Determining who Holds Title to Intellectual Property ad for Resolving Disputes Thereto
>
> Should a dispute arise over who holds the title to works and copyright, or related to any other provision of this policy, the dispute will be submitted for the consideration of the

and Molinelli filed a formal administrative claim before defendant Escalona. The claim letter sought to enforce their copyrights and explained in detail the violation to their moral right to the integrity of the work. Furthermore, the claim clearly withdrew any authorization "that could be understood" for the use of the Original Manuscript or any of its derivatives and sought injunctive relief and destruction of all copies thereof. (Ownership-SUFS-36-39).

At the time of the initial administrative claim was filed, defendants had invested few resources, if any, and had no vested interest in the proposal. Pursuant to Certification 93-111 which is often quoted by defendants, prior to implementation the document still had to obtain approval of the Administrative Board and the Board of Trustees of the UPR, as well as from the PR-CHE after the evaluation by an Independent Board of Consultants. (Ownership-SUFS 40-42). At the same time, all defendants were aware of the risks continuing the unauthorized use of plaintiffs' work since they had been copied of the initial administrative claim to Chancelor Escalona. (Ownership-SUFS 36-39).

### B. *Relevant Procedural Background:*

The Structural Bias of the Ongoing Internal Administrative Process (UPR-IAP) which lacks jurisdiction has deprived Plaintiffs of a determination on the merits by an impartial forum in violation of their Constitutional and federal statutory rights.

---

chancellor of the campus of the complainant, who may make a final determination on the matter in keeping with the provisions of law and applicable regulations. The decision of the chancellor will be binding on all parties… See **Exhibit 4** (UPR-IP Policy).

Since July 5, 2007, until today[8], plaintiffs have been forced by defendants to continue litigation in two (2) separate forums.  This is so, in spite of the fact that they lack jurisdiction to adjudicate a copyright infringement case and despite their express agreement within the instant case to stay the administrative process. See **Exhibit 2** (Dkt. 280).  The "compulsory" internal administrative process UPR related defendants serve simultaneously as parties, advocates and judges not only lacks jurisdiction in the instant case, but has a severe structural bias which defeats defendants preclusion and estoppel arguments and supports plaintiffs' new due process allegations.

On August 23, 2007, without any opposition brief and without holding a hearing, defendant Escalona summarily denied plaintiffs July 5, 2007 claim based on the opinion of an "expert" which to this day UPR defendants refuse to disclose.  Her "final" administrative "decision" as UPR Chancellor also lacked any findings of fact or determinations of law. (Bias – SUFS- 5).

Defendant Escalona adjudicated the matter in spite of the appearance of bias created by her participation in the 2006 unauthorized resurrection and amendment of the proposal after she had personally informed plaintiffs that the institution lacked resources in 2004. (Ownership – SUFS-26).  Defendant Escalona was fully conscious that plaintiffs were the sole authors of the Original Manuscript as she was Dean of the College of Natural Sciences while Plaintiffs were developing their idea.  It was defendant Escalona who later submitted an unauthorized version

---

[8] In order to further delay and avoid an impartial determination on the merits as to copyright ownership UPR defendants mislead the Court into believing that there is a final determination in the internal administrative proceeding.  As recent as October 18, 2011, the Board of Trustees issued a Resolution ordering defendant Munoz to answer Plaintiffs appeal pending before that body.  See Exhibit 8 (October 18th, 2011 Resolution on the UPR-IAP).

of the proposal to the UPR's Administrative Board for further approval against plaintiffs express will.

On September 7, 2007, as required by the UPR's Regulation of Appellate Procedures, Certification Number 138, 1981-82 [9], Bird and Molinelli filled a "mandatory" internal administrative appeal before UPR President, defendant Antonio Garcia Padilla. Defendant Garcia Padilla did not even respond to this second mandatory appeal. It is an uncontested fact that defendant Garcia Padilla was an interested party in the dispute and a possible witness since he had personal knowledge that Bird and Molinelli were independently working on the proposal since 1995. (Bias-SUFS-6/ Ownership-SUFS-11).

It was not until April 8, 2008, that the UPR President issued an order assuming jurisdiction over the mandatory internal administrative appeal. According to defendant Garcia Padilla's Order, the administrative case was referred to an Examining Officer, Angel Rossy who was instructed to submit a report with recommendations. (Bias-SUFS 7). It is an uncontested fact that Examiner Rossy was hired by the defendant Garcia Padilla himself on a yearly basis. His pecuniary interest in protecting the institution as well as the individual defendant who approved his yearly contract is uncontested as public documents obtained from the Puerto Rico Comptroller's Office[10] reveal that from 2007 to 2010 he was engaged by the UPR sixty thousand dollars ($60,000.00) per year for a part time engagement. (Bias-SUFS 16 and 17).

It was not until January 23, 2009, that the Examining Officer held an evidentiary hearing on the merits of the work for hire defense raised by the UPR against plaintiffs *prima*

---

[9] Certification 138, 1981-82, as amended, which is brought by UPR prime defendants as support for their motion for summary judgment, states

[10] These documents were requested to UPR defendants on discovery and were frivolously denied on "relevancy" and "confidentiality" grounds.

*facie* case of infringement.[11]  The day of the hearing, Plaintiffs came prepared bringing all witnesses and evidence for rebuttal. The UPR showed up unprepared, without evidence or witnesses, <u>asking on the spot and without prior notice to change the evidentiary hearing to a status conference</u>. Without any consideration for plaintiffs or sanctions to the UPR the hearing was rescheduled for April 14 and 15, 2009 when defendant Weiner was allegedly available.  In addition, <u>Examiner Rossy verbally admitted that the internal administrative forum lacked jurisdiction and competence to issue the injunctive relief and damages sought by plaintiffs</u>. (Bias-SUFS-8-12).  <u>This Honorable Court would later reiterate the administrative forums' inadequacy to resolve the copyright claim at hand</u>.  See **Exhibit 2** (Dkt. 280-Courts' clarification of the order to stay at page 5).[12]

Realizing the bias and lack of competence of the internal administrative forum to rule on their claims, plaintiffs sought a stay of the proceedings so that their limited resources could be invested in bringing their claims to this Honorable Court which was the competent and impartial forum.  In yet another act of bias, on the morning of April 14th, 2009, plaintiffs were informed through a telephone conversation with the Examining Officer Rossy that the hearing scheduled for that same day had been canceled and <u>their request to stay procedures denied</u>. Plaintiffs were instructed to seek the order to stay the UPR administrative proceeding from this Honorable Court. (Bias-SUFS-14).

---

[11] The hearing was specifically to receive evidence from the parties "work for hire" defense for which the UPR bore the burden of proof.  Since then it was recognized that proving work for hire was the key issue in this case. The main witness to be heard was defendant Weiner since the defense relied solely on the alleged fact that he orally commissioned the preparation of the Original Manuscript to Molinelli.

[12]   The Order quotes the transcript of the preliminary injunction hearing where the Court stated:  "… I understand that [the state administrative judge] has no power to grant a copyright remedy…".

On July 14, 2009 plaintiffs filed the instant suit and soon thereafter a motion requesting a preliminary injunction (Dkt. 7). On August 20, 2009, pursuant to Rossy's instructions, plaintiffs filed a Motion to Stay the Administrative Proceedings (See Dkt. 21). On October 14th, 2009 the Court held a Show Cause Hearing where the UPR as well as all individual defendants agreed through their attorneys to stay the administrative process, as a consequence the Court approved the stay requested. See **Exhibit 2** (Dkt. 280 -Courts' clarification of the order to stay).

In spite of the agreement to stay, <u>on March 9th, 2010</u> UPR President issued a "Resolution" regarding the <u>"appeal" which had been before him since September 7, 2007</u>. Since then, despite the UPR-IAP's the lack of jurisdiction and severe structural and actual bias, UPR related defendants continue forcing upon plaintiffs litigation in that forum causing them irreparable harm in the form of procedural due process violations, dilution of their resources and lack of adequate state review as to their federal copyright claims.[13]

*DISCUSSION*

**A.** *Copyright Ownership*

Under the Copyright Act of 1976, copyright ownership generally vests in the author of a work. <u>17 U.S.C. § 201(a)</u>. "Author" is party who actually creates the work, that is, the person who translates idea into fixed, tangible expression entitled to copyright protection. <u>17 U.S.C.A. § 102</u>. In this case, it is uncontested that Bird and Molinelli are

---

[13] For a detailed description of all occurrences within the UPR-IAP, see Statement of Uncontested Facts related to Lack of Jurisdiction, Bias and Irreparable Harm submitted in support hereof.

the authors of the Original Manuscript.  Defendants however, raise the work for hire

exception as a defense to their admitted acts of infringement.  In essence, individual

defendants contend, with or without standing therefore[14], that the UPR owns plaintiffs

work by virtue of being their employer.

The work for hire defense is codified in 17 U.S.C.A. §101.  A "work made for

hire" is:

> **(1)** a work prepared by an employee within the scope of his or her
> employment; or
>
> **(2)** a work specially ordered or commissioned for use as a contribution to
> a collective work, as a part of a motion picture or other audiovisual work,
> as a translation, as a supplementary work, as a compilation, as an
> instructional text, as a test, as answer material for a test, or as an atlas, if
> the parties expressly agree in a written instrument signed by them that the
> work shall be considered a work made for hire. For the purpose of the
> foregoing sentence, a "supplementary work" is a work prepared for
> publication as a secondary adjunct to a work by another author for the
> purpose of introducing, concluding, illustrating, explaining, revising,
> commenting upon, or assisting in the use of the other work, such as
> forewords, afterwords, pictorial illustrations, maps, charts, tables, editorial
> notes, musical arrangements, answer material for tests, bibliographies,
> appendixes, and indexes, and an "instructional text" is a literary, pictorial,
> or graphic work prepared for publication and with the purpose of use in
> systematic instructional activities.

Accordingly, a work for hire can arise through <u>one of two mutually exclusive</u>

<u>means</u>, one for employees and one for independent contractors.  See <u>*CCNV v. Reid*</u>, 490

US 730, (1989) (*Reid*).  In *Reid* the Supreme Court determined that classification of a

particular hired party should be made with reference to agency law.  Nonetheless, in the

---

[14] The UPR as an institution is no longer a party to the instant suit.  Plaintiffs contend that individual defendants do not have standing to question their *prima facie* case of ownership.  <u>Neither the institution, nor individual defendants have competing authorship claims over the Original Manuscript at issue</u>.  (Ownership SUFS- 31-35).

instant case <u>plaintiffs admit that they are UPR employees</u>.   Consequently, the analysis

under the law of agency is irrelevant for classification purposes.

In addition to 17 U.S.C.A. §101 this Court has already determined that the facts of

the instant case must be analyzed under the UPR's Institutional Policy Regarding

Intellectual Property, Certification 93-140.  which expressly moderates the work for hire

doctrine applicable to the instant case[15].  See **Exhibit 3** (Dkt. 264 Opinion and Order as

to the applicability of the work for hire doctrine to the academic environment) and

**Exhibit 4** (UPR-IP Policy).  As the policy regulates in detail the ownership of copyrights

for work produced by UPR employees, it makes the scope of employment analysis

proposed by defendants irrelevant to the instant case.[16]

---

[15] See docket 264, where this Honorable Court issued a seminal Opinion and Order regarding the applicability of the work for hire in the academic setting.  Therein the Court reviewed the history and judicial evolution of the "teachers exception" to the work for hire doctrine in copyrights since English Law in the 1800's.

After deciding that the exception did not survive the enforcement of the1976 Copyright Act, the Court recognized that the current trend in academia was that "universities proactively created policies that grant professors ownership of copyrights which the "teacher exception" once ensured" and concluded:

> Thus, the Court must resolve the instant case within the framework of the work for hire doctrine, utilizing the standard set forth in Reid <u>as well as considering any relevant University regulations specifically recognizing professor or university ownership over certain works</u>." See **Exhibit 3** (Dkt. 264 at page17).

[16] The analysis of scope of employment under the law of agency was clearly relevant in *Reid* because plaintiff there, a sculptor, <u>was not an employee, but rather an independent contractor</u>.   Interesting though is that <u>in *Reid* the Supreme Court sustained his copyrights in spite of the fact that the work at issue was specifically commissioned and that the patron conceptualized the idea, gave the artist detailed instructions, and continuously follow up on progress</u>.

Relevant to our analysis are Articles V (A) and VII of the IP Policy.  Article V

expressly recognizes with regards to work for hire that:

> "that jurisprudence[17] has established special considerations regarding the
> applicability of this doctrine in the academic and university world".
> (Emphasis supplied).

We turn the attention of the Court to the following leading cases *Weinstein v.*

*University of Ill.*, 811 F2d 1091 (7th Cir. 1987),  *Hays v. Sony Corp of America*, 847 F. 2d

412 (7th Cir. 1988) and, more recently,  *Pavlica v. Behr*, 397  F. Supp. 2d 519 (2005)

which are particularly relevant for their factual similarities with instant case and the

interpretation of work for hire doctrine within an academic setting.     Of the three

*Weinstein* is especially relevant as it pertains to the intellectual property of a professor

within a university which, like the UPR, had an intellectual property policy in force that

served as *ratio decidendi* for the Court.

Article VII of the UPR-IP Policy, of which defendants conveniently only quote

one paragraph in their motion, regulates in detail the ownership of copyrights for work

produced by UPR professors and students:

> Teaching personnel and students of the University of Puerto Rico will
> retain title to works created in the normal course of their academic
> activities and study, unless otherwise provided. (Emphasis supplied).
>
> However the University of Puerto Rico will hold title when these works
> are products of the exercise of administrative or academic functions
> specifically commissioned and officially assigned by the institution,
> according to the stipulations and applicability of the concept of work done
> for hire in force, unless otherwise provided.
>
> The University of Puerto Rico will also hold partial title in cases in which
> the University has planned the work and has defined its participation in or
> financing of the work in advance, or has directly or intentionally

> facilitated or fostered its development, subject to the terms agreed upon, and unless otherwise provided.
>
> The authors retain their title over work developed through and in the course of sabbatical, leaves, release time periods of special assignments and other similar situations, unless otherwise provided. Title to thesis and other similar required academic requirements belongs to the student or students (though they receive academic credit for them), unless otherwise provided.

This provision clearly protects work of teaching personnel by establishing a presumption of copyright ownership even if is produced as a result of ordinary duties. According to the afore quoted policy the UPR holds title only in one of two circumstances: (a) written transfer of rights ("unless otherwise provided"); or (b) a specific commission and official assignment by the institution. Plaintiffs submit that in order for that "specific commission or official assignment" to be valid it must comply with the afore quoted requirements under 17 USCA §101 (2), namely: (a) there must be a written document signed by the author; and (b) the type of work must be within one of the categories enumerated therein. In this case, both facts are uncontested in favor of plaintiffs: (a) there is no written agreement; (2) the Original Manuscript creating a new graduate program is not within the types of work enumerated in 17 USCA §101(2).

After attempting to reject the validity of their own IP Policy, defendants argue in the alternative that pursuant to paragraph 3 of Article VII, the UPR holds partial title in this case. According to the quoted text, in order for the institution to hold partial title it must have in advance : (1) planned the work and defined its participation; or (2) financed the same; or (3) directly or intentionally facilitated or fostered its development. The uncontested facts prove that the Original Manuscript was created and developed by plaintiffs at their own initiative within their spare time (mostly during vacation time and

- 17 -

holidays), without any compensation or release time from the institution. Defendants also admit that they provided no instructions or due date for the work to be completed. Defendants have provided no evidence whatsoever that they defined their participation, financed or fostered the development of the Original Manuscript until **after** the same was brought by plaintiffs to defendant Weiner in 2001. (Ownership SUFS-10-22). Thus the UPR cannot hold partial title to the work.

Through the issuance of official memorandums, the UPR further lead their faculty to trust that they own the copyrights to their academic work regardless of scope of employment. Most relevant amongst them is the Circular 41, 2006-2007 which was introduced into evidence as Plaintiffs Exhibit 4 during the PIH. See **Exhibit 5** (Circular 41, 2006-2007 regarding the copyright ownership of syllabi).

Interpreting the IP Policy, Circular 41 expressly recognizes professors' copyright ownership of the syllabi of the courses they are employed to teach:

> A professor shall be the owner of his/her syllabus it the initiative to conceptualize a new course, prepare it and register it has been his/her own, <u>unless there was a previous written agreement transferring the rights</u> to the University, or if the University has identified the need for a course on a specific subject and, in writing, has assigned or commissioned the task of preparing and developing it to a specific professor.

Accordingly <u>absent a written agreement to the contrary</u>, UPR professors own the copyrights to syllabi produced at their own initiative even when preparation of <u>course syllabi is a core duty within of a professor</u>. Such a written agreement was also necessary to transfer plaintiffs copyrights in the Original Manuscript to the UPR as it is much, much more than a mere syllabus. This interpretation is consistent with the Statement on Copyrights approved by the American Association of University Professors (AAUP) who

often appear as *amicus curiae* in cases like the one at hand.  See **Exhibit 6** (AAUP Policy Tenth Ed.2).

Even ignoring the clear mandate of UPR's own IP Policy and Circular 41,  as well as *Weinstein*, *Hays* and *Pavlica*, defendants  clearly fail also under *Reid's* three prong test for determining whether the Original Manuscript was created within the scope of plaintiffs employment.   *Reid* suggests:

> …the Court <u>may</u> consider, applying common law principles of agency, whether: "(a) [the work] is of the kind [the employee] is employed to perform; (b) it occurs substantially within authorized time and space limits; [and] (c) it is actuated, at least in part, by a purpose to serve the master." *Reid supra at 739-40* (citing <u>Section 228</u> of Restatement (Second) of Agency); See also *Pavlica* v. Behr, 397 F. Supp. 2nd 519 (2005)  (applying three-prong test to determine whether the work for hire exception applied to teacher's materials).

### a. <u>Plaintiffs were not employed by the UPR to create and develop new academic programs</u>

Plaintiffs were employed by the UPR as professors.    As a matter of fact, there is no proper employment contract between the parties detailing duties of the position, but a biref appointment letter which is not countersigned by plaintiffs.  (Ownership SUFS-1-2).

Although university professors are generally qualified to design academic programs, Bird and Molinelli were not hired by the UPR for that purpose.  Plaintiffs' employment offer from the UPR was to prepare and teach courses for existing programs, not to develop new inexistent graduate programs in their spare time and at their own cost.

Defendants quote Article VII[18] of the Professor Manual as imposing the duty of "collaborating in curriculum development" as in order to demonstrate that creating a new academic program was within plaintiffs duties as professors.  But uncontested facts show that creating and developing a new graduate program is not the kind work that plaintiffs were employed to perform.

Defendant Escalona admitted during the PIJ three key relevant facts: (1) the Professors Manual is only informative in nature; (2) that while the General Regulation includes participation in academic planning as a duty of professors, it does not specify creating and developing new academic programs; and (3) that when the UPR commissions extraordinary tasks it is customary to grant release time of extraordinary compensation.  (Ownership SUFS-20)

### b. The Original Manuscript was produced within spare time and outside of UPR premises

In this prong of the *Reid* test, UPR related defendants attempt to divert the attention of the court from the uncontested facts.   Unable to disprove that plaintiffs created and developed the Original Manuscript using mostly vacations and holiday time, defendants argue that academics perform most of the duties of their in a flexible time frame and outside of premises.   The implications of their proposition are absurd, since under their point of view, plaintiffs work never stops and anything academic created while employed by the UPR belongs to the UPR.  Defendants seem to ignore that slavery was abolished long time ago.

---

[18] Conveniently they fail to quote Articles VI and Section IX.A.3, which recognize academic freedom and intellectual property rights amongst the fundamental rights of professors.  See both attached as **Exhibit 7** hereto.

Notwithstanding, the uncontested facts are that plaintiffs created at their initiative and developed the Original Manuscript with their own resources during their spare time. (Ownership SUFS- 10-22.)   Defendants also fail at this second prong of the test.

### c.   <u>Plaintiffs were motivated primarily by the environmental crisis and needs of society in general</u>

Plaintiffs maintain, and defendants have been unable to contest, that they created the Original Manuscript motivated by the critical environmental situation of this island and the independent public battles fought by Molinelli without the UPR's involvement. without any prompting or direction by defendants or by theUPR, using their spare time and their own resources(Ownership SUFS- 8 and 9). While defendants claim that the plaintiffs followed <u>formality</u> guidelines specific to the UPR (PR- CHE Certification 93-113), the truth is that the same guidelines must be followed by any proponent who wishes to obtain PR-CHE approval to implement a program in an institution of higher education in Puerto Rico.

In light of the supporting uncontested facts and the foregoing legal discussion, plaintiffs move the court to issue judgment declaring that the copyrights to the Original Manuscript belong to their authors, professors Bird and Molinelli and did not transfer to the UPR by operation of the work for hire doctrine.

### B.   <u>This Court must continue proceedings in the instant case and permanently enjoin defendants from continuing the UPR Internal Administrative Process</u>

UPR related defendants assert preclusion and estoppels defenses based on the false allegation that there is a final decision in the UPR's internal appeal process ("UPR-

IAP") which supposedly allowed for an impartial decision on the merits.    They claim that under the abstention doctrine established under Younger v. Harris, 401 U.S 37 (1971) (*Younger*)*,* this Court must defer to that forum.    Contrary to this, plaintiffs will demonstrate that the uncontested facts not only require intervention, but in fact justify the issuance of a permanent injunction barring the continuance of that process at summary judgment stage.

*First*, the uncontested facts demonstrate that this case does not comply either with the preclusion or the estoppel requirements.    Parties are not identical in the internal process since only the UPR Rio Piedras Campus is the defendant there, while the UPR is not even a defendant here. Likewise, causes cannot be identical as this Court has exclusive jurisdiction as to the federal copyright claims and remedies sought by plaintiffs there under.

*Second*, and more importantly, the uncontested evidence of structural and actual bias of the UPR-IAP justifies intervention and permanent injunctive relief under the exception to the *Younger*  established in Gibson v. Berryhill*,* 411 U.S. 564, (1973) (*Gibson*).  See also, Esso Standard Oil Co. v. Cotto, 389 F 3d 212 (2004) (*Esso I*) and Esso Standard Oil Co. v. Rodriguez Perez, 455 F3d 1 (2006) affirmed by Esso Standard Oil v. Lopez-Freytes , 467 F.Supp 2d 156 (2006) (*Esso II*).

In *Younger* the Supreme Court recognized that, in the interest of comity and federalism, federal courts should ordinarily refrain from issuing injunctions that interfere with **ongoing criminal** prosecutions in state court. *Younger*, 401 U.S. at 44-45.    Over time, *Younger* abstention has been extended to '**coercive**'[19] civil cases involving the state

---

[19] In their motion for summary judgment UPR related defendants fail to discuss and

and to comparable state administrative proceedings that are quasi-judicial in character and implicate important state interests." *Esso I* at 218. (Emphasis supplied). Notwithstanding, *Younger* 's abstention rule applies **as long as the state proceedings provide an adequate opportunity for the complaining party to present its federal claims**.  See *Esso I* at 218 quoting *Gibson* and *Middlesex County Ethics Comm.,* 457 U.S. at 435.

The *Gibson* exception allows a federal court to intervene where the state adjudicator is so biased as to be incompetent to adjudicate the matter and where the petitioner shows that abstention would result in irreparable harm.   The Supreme Court established in *Gibson* that the key question to decide whether abstention was warranted under *Younger* was **whether complainant had "the opportunity to raise and have timely decided by a competent state tribunal the federal issues involved**." *Gibson,* at 577.  See also *Esso I* at 218.

Uncontested facts demonstrate that the UPR's-IAP was neither timely, nor competent to decide plaintiffs federal copyright claims. Not only does UPR-IAP lack subject matter jurisdiction to resolve the issues raised in the instant case,  but, its extreme bias, structural and actual,   makes federal intervention appropriate in this case under the exception carved out in *Gibson,,* 411 U.S. 564, (1973).

---

demonstrate how the UPR-IAP constitutes a "coercive" proceeding which is *sine qua non* requirement for *Younger* abstention to apply.   Notwithstanding, for argumentation purposes, we assume compliance with *Younger* since the uncontested facts clearly warrant intervention of this Court under *Gibson* and *Esso I and II* regardless.

a. **Structural and Actual Bias within he ongoing UPR –IAP**

The UPR-IAP, commenced on July 5, 2007 is **still not over**.  As recently as October 18, 2011, defendant Villaronga issued an order to defendant Munoz to file a position brief regarding plaintiffs appeal pending before the Board of Trustees. See **Exhibit 8** (UPR-IAP October 18, 2011 Resolution).    While it is true that plaintiffs have impeached already the administrative process before the PR Appeals Court, the judgment clearly indicates that the forum **declined to enter into the merits** of the appeal.  Certainly, plaintiffs did not recur to the PR Supreme Court because the PR Court of Appeals judgment also stated that the President of the UPR still had jurisdiction in the case and that this was the competent forum to continue proceedings. (Bias SUFS- 31-33).

UPR-IAP proceedings violate the Due Process Clause because the UPR Officers who decide whether plaintiffs' Original Manuscript is or not a work for hire and the Hearing Officers who make recommendations have severe and irremediable conflicts of interest. It is an uncontested facts that UPR Officers who have issued resolutions against plaintiffs in the UPR –IAP **are simultaneously defendants in the instant action** and were personally involved in the facts of the case.

The July 5, 2007 initial claim was resolved by defendant Escalona while she was Chancellor.  Defendant Escalona had personal knowledge that plaintiffs were developing a new graduate program of their own initiative before defendant Weiner was even appointed Dean of the College of Natural Sciences.    Consequently, she knew that he could not have orally commissioned the work as he has claimed.    Notwithstanding, she issued an administrative decision without holding  a hearing, devoid of findings of fact or

- 24 -

determinations of law dismissing plaintiffs claims in violation of their rights under the Due Process Clause. (Bias SUFS- 5).

On September 7, 2007 plaintiffs appealed before UPR President.    Presidents Garcia Padilla, De La Torre, and Munoz, all of whom have declined to provide plaintiffs an opportunity to a hearing on the merits of the work for hire defense where defendant Weiner can be crossed examined on his alleged oral commission to Plaintiffs.    All of these decision makers were *de facto* unable to be impartial.  They had severe actual conflicts of interest because they were sued in the instant matter in official and individual capacities as primary and contributory infringers risking liability if they recognized plaintiffs copyrights in the Original Manuscript.  (Bias SUFS-6-20).

The UPR-IAP is also structurally biased as the millions of dollars and prestige obtained by the UPR from the unauthorized use of plaintiffs work represent a pecuniary and reputational interest to UPR adjudicative officers.  The structural bias extends to the Examining Officers within the UPR-IAP since it is uncontested that: (1) their professional services agreements are renovated each year by UPR Presidents; (2) they bill by the hour according to the work referred by UPR Presidents; and (3) they are actually paid substantial sums of money from the UPR General Fund, the same account into which the NSF Grant is deposited.   ( Bias SUFS -16-17).

These uncontested facts clearly demonstrate a severe structural bias which would impede impartiality either from UPR Officers who are also defendants in the instant action are unable to evade clear conflict of interest as they are simultaneously parties, advocates and judges of the position directly against plaintiffs within the UPR-IAP.  The Examining Officers ability for impartial resolution is also impaired when their hiring is

- 25 -

approved by these UPR Presidents and their payment issued by the institution.   Neither will issue a recommendation or ruling against their own pecuniary interests.

Uncontested facts also demonstrate how this severe bias materialized as serious irregularities in the proceedings in violation of plaintiffs right under the Due Process Clause, specific examples include:

(1) Lack of timely response to plaintiffs' administrative appeals to UPR Presidents ;

(2) Cancelation of evidentiary hearing without prior written request by the UPR;

(3) Denial of plaintiffs repeated motions to stay of proceedings by a Hearing Officer who lacks independence, in spite of him admitting lack of jurisdiction as to federal copyright claims and lack of competence to provide injunctive relief or damages;

(4) Denial of evidentiary hearing despite the fact that the UPR's work for hire defense depended upon an alleged oral commission by defendant Weiner to plaintiff Molinelli;

(5) Issuance by the UPR President De La Torre of a Resolution summarily dismissing plaintiffs claims against his own agreement to stay proceedings before after the six month term to resolve had expired and right before the Preliminary Injunction Hearing was to be held by this Honorable Court;

(6) Denial of unopposed motion for relief raising lack of subject matter jurisdiction one and a half (1 ½ ) years  after the same was filed without justification for delay and at the same time that plaintiffs were due to

- 26 -

oppose motions for summary judgment by UPR related defendants in the instant action; (Bias SUFS – 1-40).

### b. Continuance of UPR-IAP constitutes a Due Process violation which is causing Plaintiffs Irreparable Harm

Submission to a biased adjudicator constitutes an ongoing, independent injury that requires immediate judicial relief. *United Church,* 689 F.2d at 701; *see also Ward,* 409 U.S. at 61-62, 93 S.Ct. 80 ("Petitioner is entitled to a neutral and detached judge in the first instance.").

It is uncontested that plaintiffs brought their claims to the internal administrative procedure **forced by the UPR's Institutional Policy on Intellectual Property Article V**.  It is also uncontested that they have repeatedly requested to defendants within the UPR-IAP to stay proceeding raising both, their lack of subject matter jurisdiction under the Copyright Act as well as their loss of jurisdiction over state claims under Puerto Rico's Law of Administrative Procedure (LPAU), by the unjustified delay in resolving plaintiffs claims in excess of the 6 months granted by LPAU to resolve unless justified, 3 L.P.R.A. §2163.   Concerned UPR related defendants have also failed to justify how President De La Torre issued a summary dismissal of plaintiffs' claims against his own commitment to stay the UPR-IAP before this Court.  See **Exhibit 2** (Dkt. 280-Courts' clarification of the order to stay at page 5)

UPR related defendants who continue to engage plaintiffs in a structurally biased and incompetent administrative proceeding are violating clearly established constitutional rights under the Due Process Clause as well as federal statutory rights under 42 USCA §1983. Consequently they cannot raise the qualified immunity defense as to these claims.

Plaintiffs are also suffering irreparable harm since there is no possible eventual judicial

review as to plaintiffs' federal copyright infringement claims because this Court has exclusive jurisdiction to decide is such cases and provide relief.  17 U.S.C.A. §101, et seq.  Likewise, plaintiffs limited resources are being diluted to the point of exhaustion by a process which is incompetent to provide either a timely and impartial solution, or the relief sought.

UPR-IAP's lack subject matter jurisdiction coupled with the  afore mentioned examples of structural and actual bias support federal intervention in the instant matter as well plaintiffs renewed claims under 42 USCA §1983. Actual and structural bias within the UPR-IAP deprived plaintiffs of their right to a fair and impartial tribunal, in violation of Due Process Clause, and thus concerned UPR related defendants should be permanently enjoined from further prosecuting plaintiffs claims.  Concerned defendants currently are members of the Board of Trustees where plaintiffs claims are being entertained within the UPR-IAP.  Consequently, **these UPR related defendants who filed a separate motion for summary judgment (Dkt. 341) are indispensable which must be retained in the litigation**.

## C.  *Other Defenses Raised by Defendants*

In a desperate attempt to avoid declaratory judgment on the merits of the copyright ownership dispute in the instant case defendants raise a series of defenses which are either clearly inapplicable to the instant case, or not susceptible of determination at the summary stage.  We briefly engage and rebut each one.

- 28 -

### a.  __Functionality__

In their motion for summary judgment UPR Codefendants suggest that Plaintiffs work is not copyrightable because it is a functional work.  They forcibly argue that a proposal creating a new graduate program is analogous to a "method" or "process" description and thus not copyrightable under 17 USC 102(b).  These arguments, which have been discarded several times by this Honorable Court, are nothing but an attempt to divert the Court attention from the key ownership determination at issue.

Under §102 (a) of the Copyright Act[20] a work of authorship need only be: (1) original; and (2) fixed in a tangible medium of expression to be entitled to copyright protection.  A work is "original" to author and thus qualifies for copyright protection if work is independently created by author and possesses some minimal degree of creativity. 17 U.S.C.A. § 101 et seq.; U.S.C.A. Const. Art. 1, § 8, cl. 8.

_Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,_ 499 U.S. 340 (1991). (_Feist_) is the leading case as to the meaning of originality.  Relying on the treaty of renowed copyright jurist Melville Nimmer, in _Feist_ the Supreme Court of the United States established that:

> To qualify for copyright protection, a work must be original to the author. See _Harper & Row, supra,_ at 547-549, 105 S.Ct., at 2223-2224. Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity. 1 M. Nimmer & D. Nimmer, Copyright §§ 2.01[A], [B] (1990) (hereinafter Nimmer). To be

---

[20] §102(a) states:

Copyright protection subsists, in accordance with this title, in original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device.

sure, the requisite level of creativity is extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily, as they possess some creative spark, "no matter how crude, humble or obvious" it might be. *Id.,* § 1.08 [C] [1]. Originality does not signify novelty; a work may be original even though it closely resembles other works so long as the similarity is fortuitous, not the result of copying. " *Feist*, supra. at 346. (emphasis supplied).

Unable to defeat either the originality or tangible form requirements, defendants guide the Court to inquire whether original expression falls within one of the categories foreclosed from copyright protection by §102(b):

…(b) In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form …

In particular, defendants contend that the Original Manuscript at issue is nothing more than a "method of operation". In support of their position, defendants quote *Garcia-Goyco v. Puerto Rico Highway Authority* 275 F.Supp.2d 142 (2003). (*Garcia-Goyco*). Defendants reliance in *Garcia-Goyco* is misplaced as the facts and work at issue there are clearly distinguishable from the instant case. Different from here, in *Garcia-Goyco* the **work was produced pursuant to a written commission in relation to an ongoing project**.

Likewise, the three (3) documents at issue there were clearly within §102 (b) exceptions:

"(1)Project **Mitigation Plan** for the Paso del Indio Archeological Site, Puerto Rico Highway 22, Río Abajo Ward, Vega Baja;

(2)**Proposal for the achievement of the laboratory analysis** and the preparation of the final report of the second season of excavations in Paso del Indio 1994-1995; and (3) **Research design and work plan** for the laboratory analysis and the preparation of the report of the Paso del Indio Archeological Project. *Garcia-Goyco,* Id. at 150.

It is an undisputed fact that the Original Manuscript at issue describes a new graduate program specialized in tropical islands which was inexistent in any other university of the world at the time of creation. (Ownership SUFS- 8-10)   It is also undisputed that it took Plaintiffs five years of research and two of writing to produce the 186 page document.  (Ownership SUFS- 15).

The document at issue clearly creates the new program of studies itself and is not merely a method for operating an existing program.  The uncontested fact that the graduate program developed by plaintiffs did not even exist clearly precludes the argument that the Original Manuscript is merely a plan for implementation.   Moreover, plaintiffs have already submitted uncontested evidence to this Court, that analogous proposals are repeatedly registered by the US Copyright Office. See **Exhibit 9** (Multiple registers of analogous proposals within the US Copyright Office).

### b.   Entitlement to Injunctive Relief

In a case involving claims of copyright infringement, this Honorable Court has the authority to "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. sec. 502 (a).

In the copyright context, the standard applicable to a request for preliminary injunction is different from the standard generally applicable to other areas of the law.

- 31 -

Under the traditional test of the First Circuit Court of Appeals (hereinafter referred to as the "First Circuit"), "the propriety of preliminary injunctive relief depends on an amalgam of four factors: (i) the likelihood that the movant will succeed on the merits; (ii) the possibility that, without an injunction, the movant will suffer irreparable harm; (iii) the balance of relevant hardships as between the parties (whether the movant's harm is greater than the injury the defendant will suffer if the injunction is granted); and (iv) the effect of the court's ruling on the public interest. <u>Coquico, Inc. v. Rodríguez Miranda</u>, 562 F.3d. 62 (1st Cir. 2009); <u>Borinquen Biscuit Corp. v. M.V. Trading Corp</u>., 443 F.3d 112, 115 (1st Cir. 2006). However, in copyright cases the First Circuit has found that the first of these four factors normally weighs heaviest in the decisional scales because the resolution of the other three factors often turns on the plaintiff's likelihood of success, <u>Concrete Mach. Co. v. Classic Lawn Orns., Inc</u>., 843 F. 2d. 600, 611-12 (1st Cir. 1988). "The heightened danger of evaluating each factor independently in copyright actions is at least partly attributable to the fact that copyright protects the unique and somewhat intangible interest of creative expression. Unlike most property rights, the value of this interest is often fleeting." <u>Concrete</u>, *supra* at 611.

In regards to copyrights cases, the First Circuit, in <u>Concrete</u>, *supra* at 611-13, stated the following

> Several general rules regarding application of the four factors of the preliminary injunction test to copyright cases have evolved. First, …, irreparable harm is usually presumed if likelihood of success on the copyright claim has been shown. …⁻There is, therefore, no need [to] actually … prove irreparable harm when seeking an injunction against copyright infringement. Secondly, the issue of public policy rarely is a genuine issue if the copyright owner has established a likelihood of success: 'Since Congress has elected to grant certain exclusive rights to the owner of a copyright, it is **virtually axiomatic that the public interest can only be served by upholding copyright protections and, correspondingly,**

**preventing the misappropriation of the skills, creative energies, and resources which are invested in the protected work.' …**

More important …is the sometimes questionable relevance of the 'balance of hardships' factor to the determination of whether a likely infringer should be preliminarily enjoined. Where the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely to be infringing, such an argument in defense 'merits little equitable consideration'. …
…
If a strong likelihood of success is demonstrated, then the court should issue the injunction even if the defendant will incur the relatively greater burden; a probable infringer simply should not be allowed to continue to profit from its continuing illegality at the copyright owner's expense. …" (Citations omitted and emphasis ours).

In view of the above, the main factor for this Honorable Court to consider when evaluating plaintiffs' request for injunction as to the copyright claims is whether they are likely to or actually succeed on the merits of their copyright infringement claims.

To prevail on a claim of copyright infringement, a plaintiff must prove two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." _Feist, supra  361_. (_Feist_).  Also see Concrete, 843 F. 2d at 605.Because defendants admit that they used, adapted, translated and prepared unauthorized derivative versions of the Original Manuscript, plaintiffs satisfy the second element laid out in _Feist_.  The legal discussion and uncontested facts submitted in support hereof, demonstrate that plaintiffs own a valid copyright as well.

There is a likelihood of success on the merits of Plaintiffs' copyright infringement claims due to the fact that: (1) Plaintiffs are the sole creators and owners of the Proposal, (2) their copyrights are evidenced by Certificate of Registration No. TX-6-600-784, issued by the United States Copyright Office on June 29th, 2007 and by Certificate of Registration issued by the Puerto Rico Intellectual Property Registry, and (3)  in blatant

- 33 -

disregard of Plaintiffs' express opposition since July 5, 2007, defendants have continued to unfairly use and mutilate plaintiffs intellectual property auto inflicting upon themselves any damages they now claim they will suffer as a consequence of the injunctive relief[21].   (Ownership SUFS-36-42).

### D.  Plaintiffs are entitled to Damages

Defendants challenge plaintiff's ability to prove damages.   Defendants claim that plaintiff is not entitled to statutory damages. Section 412 of the Copyright Act bars, in part, statutory damages for "any infringement of copyright in an unpublished work commenced before the effective date of its registration." 17 U.S.C. 412.   Bird and Molinelli's copyrights were registered on June 29, 2007 and they are claiming statutory damages for acts of infringement occurring **after their July 5, 2007 claim letter copied to all  UPR and  PR-CHE related defendants**.   (Ownership SUFS 36-39).

Thereafter and assuming the risk thereof, on March 10, 2009, defendants who are Trustees of the UPR Board approved the infringing program for submission to PR-CHE. Likewise, on May 20, 2009, PR-CHE approved the masters for commencement without performing evaluation required by the regulation formally in force at the time.   As recently as January 31, 2011, PR-CHE defendants conditionally approved the Masters and PhD infringing programs for implementation in the UPR in spite of severe

---

[21] Once again, the individual defendants raise hypothetical irreparable damages, without standing, on behalf of non parties.  On the one hand they raise the financial and reputational interest of the UPR, on the other the interest of currently enrolled students who should have been advised that the program did not, and does not, have final approval by the PR CHE when they enrolled. (Ownership SUFS 43-45).

deficiencies pointed out by the Independent Evaluating Board.   (Ownership SUFS 41-46).      As the Court can see PR-CHE members and Trustees of the Board who independently seek summary judgment (See Dkts. 336 and 341) could be found liable for **contributory** infringement and are **indispensable parties** to consider plaintiffs claims as well as any type injunctive relief.

Defendants further argue that plaintiffs cannot prove actual damages attributable to defendants. Even absent proof of lost profits, a copyright owner may be permitted "to recover actual damages, in appropriate circumstances, for the fair market value of a license covering the defendant's infringing use." *On Davis v. Gap,* 246 F.3d 152, 172 (2d Cir.2001);  See also *Pavlica*, supra. at 528.  Accordingly, if Plaintiffs successfully prove copyright infringement by defendants, they could be entitled to a licensing fee equal to the fair market value of any derivative produced or any use of the Original Manuscript, even without proof of lost profits. Thus, defendants' argument fails.

Plaintiffs have also claimed moral damages and other damages such as loss of reputation and aguish suffered due to the acts of retaliation of several UPR related defendants (Rios and Weiner).   It is uncontested that defendants produced several unauthorized derivative works which violate the integrity of the authors work.   If plaintiffs successfully prove that they are the rightful owners of the work, they are entitled to pursue those damages either in this forum or in later in state court with the declaratory judgment as to ownership and infringement.

Finally, defendants also ignore that Plaintiffs has possible claims for procedural due process violations and retaliation which, if proven, would not be subject to the qualified immunity defense.

WHEREFORE, Plaintiffs respectfully request, that Honorable Court: (1) DENY all three (3) motions for summary judgment filed by UPR and PR-CHE defendants; (2) GRANT declaratory judgment in favor of plaintiffs as to the issue of copyright; (3) GRANT plaintiffs request to permanently enjoin concerned UPR related defendants from further violating their procedural due process rights within as biased administrative proceeding; and (3) schedule Jury Trial for the remaining fact determinations necessary finalize the instant case.

I HEREBY CERTIFY, that on this same date I electronically filed the foregoing though the CM/ECF system which should send electronic copy of the same to all attorneys of record.

RESPECTFULLY SUBMITTED.

Carolina, Puerto Rico, on this 31st day of October , 2011.

**S/ Tamara Sosa Pascual**
Tamara Sosa Pascual
USDC No. 217410
P.O. Box 9023965
San Juan, P.R. 00902-3965
Tels. 787-722-4343 / 787-646-6770
tamara@pascualmoran.com